## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

**DEBORAH LAUFER,**

       Plaintiff,

v.                           Case No. 1:19-cv-305-AW-GRJ

**TEMPLE HILL, INC.,**
**d/b/a QUALITY INN,**

       Defendant,

_____/

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### and MEMORANDUM OF LAW

       This is an action brought pursuant to the Americans With Disabilities Act, in which the Plaintiff, Deborah Laufer, is requesting this Court to order the Defendant to bring the on-line reservation systems it uses into compliance with the requirements of  28 C.F.R. Section 36.302(e). Pursuant to Rule 56, *Fed.R.Civ.P.*, Ms. Laufer, now moves for entry of summary judgment. She hereby shows the Court that there are no issues of material fact and that the Plaintiff is entitled to judgment in her favor as a matter of law.

       This motion first discusses the applicable law, followed by a statement of the facts and the application of that law to the facts.

1

**I**. **THE LAW.**

   **A. The Americans With Disabilities Act.**

        In enacting the Americans with Disabilities Act ("ADA"), Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42. U.S.C. § 12101(a)(5).   Congress concluded that there was a "compelling need...[for a] clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life."   S. Rep. No. 101-116, p. 20 (1989);  H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin.News 1990, pt. 2, pp. 303, 332.

        Title III of the ADA prescribes, as a "[g]eneral rule":

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), operates a place of public accommodation.

42 U.S.C. § 12182(a).

        "Disability" means, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment.  42 U.S.C. §12102(2).

2

The phrase "public accommodation" is defined in terms of twelve (12) extensive categories and specifically includes hotels, 42 U.S.C 12182 (7)(A).

As the owner of a place of public accommodation, specifically, the Qaulity Inn, located at 15960 N.W. U.S. 441, Alachua, Florida, the Defendant is required to comply with the ADA.  As such, Defendant is required to ensure that it's place of lodging is in compliance with the standards applicable to places of public accommodation, as set forth in the regulations promulgated by the Department of Justice ("DOJ"). Those regulations are set forth in the Code of Federal Regulations, the Americans With Disabilities Act Architectural Guidelines ("ADAAGs"), and the 2010 ADA Standards, incorporated by reference into the ADA.  These regulations impose requirements pertaining to places of public accommodation, including places of lodging, to ensure that they are accessible to disabled individuals.

More specifically, 28 C.F.R. § 36.302(e)(1), which became effective March 15, 2010, imposes the following requirement:

> **Reservations made by places of lodging**. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
>> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

3

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

In 28 C.F.R. App'x A to Part 36, Guidance on Revisions to the

A.D.A. Regulation on Nondiscrimination of the Basis of Disability by Public

Accommodations and Commercial Facilities, the D.O.J[1] stated:

Each year the Department receives many complaints concerning failed reservations. Most of these complaints involve individuals who have reserved an accessible hotel room only to discover upon arrival that the room they reserved is either not available or not accessible…In many cases individuals with disabilities expressed frustration because, while they are aware of improvements in architectural access brought about as a result of the ADA, they are unable to take advantage of these improvements because of shortcomings in current hotel reservations systems. A number of these commenters pointed out that it can be

---

[1]The A.D.A. expressly delegates authority to the Attorney General tp promulgate regulations, *see, Bay Area Addiction Research & Treatment, Inc., v. City of Antioch*, 179 F.3d 725, n.11 (9th Cir 1999).

difficult or impossible to obtain information about accessible rooms and hotel features and that even when information is provided it often is found to be incorrect upon arrival. They also noted difficulty reserving accessible rooms and the inability to guarantee or otherwise ensure that the appropriate accessible room is available when the guest arrives. The ability to obtain information about accessible guest rooms, to make reservations for accessible guest rooms in the same manner as other guests, and to be assured of an accessible room upon arrival was of critical importance to these commenters.

The D.O.J. further stressed that it is vital that hotels specifically identify and describe the accessible features of the hotel, and the guest rooms, on its reservation system:

As a practical matter, a public accommodation's designation of a guest room as 'accessible' will not ensure necessarily that the room complies with all of the 1991Standards…Further, hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features - in new and existing facilities - are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll-in shower. The presence or absence of particular accessible features such as these may be the difference between a room that is usable by a particular person with a disability and one that is not.

As to hotels that were not built after the enactment of the ADA, the D.O.J stated:

5

For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards…Reservations services for these entities should include this information and provide a way for guests to contact the appropriate hotel employee for additional information.

This Court has original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 28 U.S.C. § 1331 and 28 U.S.C. § 1343, 42 U.S.C. § 12181 *et seq*.  See also 28 U.S.C. § 2201 and § 2202.

Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the websites to bring them into compliance with 28 C.F.R. Section 36.302(e)(1) to make those websites readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by barring the Defendant from using the websites until such time as the Defendant cures its violations of the ADA.

**B. Summary Judgment**

Rule 56( c), *Fed.R.Civ.P.*, says that "summary judgment is

appropriate when the pleadings, depositions, affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Id.*  The party moving for summary judgment must

first demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317 (1986).  A 'genuine issue' exists when there is sufficient

evidence to permit a reasonable jury to find for the nonmoving party. *See, Bourque

v. FDIC,* 42 F.3d 704 (1ˢᵗ Cir. 1994).  A 'material fact' is one that has the potential

to affect the outcome of the suit under applicable law.  *Id.*

      Additionally, a party opposing a properly supported motion for

summary judgment bears the burden of establishing the existence of a genuine

issue of material fact, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

The nonmovant  "cannot create a genuine issue of fact through mere speculation or

the building of one inference upon another."  *Beale v. Hardy,* 769 F.2d 213, 214

(4ᵗʰ Cir. 1985); *See also O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d

542, 545 (4ᵗʰ Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996).  "When a

motion for summary judgment is made and supported as provided in [Rule 56], an

adverse party may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by affidavits or as otherwise

provided in [Rule 56] must set forth specific facts showing that there is a genuine

issue for trial." *Celotex* at 324. *See also, Anderson*, *supra*.

## II. THE MATERIAL FACTS

Deborah Laufer is not capable of walking more than a few steps without assistive devices and must use a wheelchair, a cane or other support (Statement of Deborah Laufer, Ex. "A" hereto, ¶ 1)[2]. She has only limited use of her hands and is vision impaired (Laufer, ¶ 1). When looking at a hotel online reservation system, she needs information so that she can ascertain whether or not the hotel and its guest rooms are suitable for one afflicted with her particular disabilities (Laufer, ¶ 2). Ms. Laufer considers herself a tester (Laufer, ¶ 3).

The Defendant owns and operates a motel known as Quality Inn, located at 15960 N.W. U.S. 441, Alachua, Florida [D.E. 9, ¶ 3]. Reservations can be booked at the Defendant's motel online through its own website, and through the third party booking sites identified in the complaint [D.E. 9, ¶ 9]. The latter include hotels.com, expedia.com, and bookings.com (Laufer, ¶ 6).

Prior to the filing of this lawsuit, specifically on September 14, 2019, September 15, 2019 and September 16, 2019, Ms. Laufer visited the online reservation system for the Defendant's hotel identified in paragraph eleven (11) of the complaint as well as the third party websites identified in paragraphs twelve

---

[2] Hereinafter, "Laufer" followed by a paragraph number.

(12) through fourteen (14) of the complaint for the purpose of reviewing and assessing the accessible features at the hotel and ascertain whether the websites contain the information required by 28 C.F.R. Section 36.302(e) and adequately informed her as to whether the hotel meets my accessibility needs. She was unable to do so. More specifically, none of the websites identified any accessible rooms, (Ex. "C," Bates # 00157)[3] nor provided for booking of accessible rooms (Laufer, ¶ 7). The Defendant's own website contained no information concerning accessibility. The third party booking sites contained nothing but generic statements such as "accessible bathroom," "disabled parking," wheelchair accessible path of travel," "roll-in shower, "in-room accessibility," "accessible rooms/facilities" and "handicapped rooms/facilities." That minimal information was not only insufficient for her to make a determination whether or not the public spaces of the hotel or any of the individual rooms were suitable for her particular needs but potentially seriously misleading were she to rely on such generic statements and reserve a room that was, in fact, not suitable for her. (Laufer, ¶ 8) .

    As a result, Ms. Laufer was deprived the same services available to the general public. When she encountered the above conditions, she suffered humiliation and frustration at being treated like a second class citizen, being denied

---

[3]"There is no ADA room for either property."

equal access and benefits to the goods, facilities, accommodations and services.

she was deterred from returning to the websites because it would be a futile gesture

to do so unless I am willing to suffer further discrimination. She was, and remains,

aware of the fact that the Defendant segregates her me and other disabled persons

by offering the non-disabled one  service and the disabled a lesser service. She is,

and remains, aware that she is being deprived the equality of opportunity afforded

to non-disabled persons to utilize the online reservation system free of

discrimination. She also knows that her ability to travel free of discrimination and

with equal access to information offered to the general public is diminished

(Laufer, ¶ 9).

On or about February 20, 2020, after this lawsuit was filed, Ms.

Laufer revisited the websites. She was still unable to reserve an accessible room

and the same violations described above were again present (Laufer, ¶ 10).

The Plaintiff plans to again review the websites in the near future and

maintains a follow-up system to ensure that she does so (Laufer, ¶ 11).

The Defendant together with an affiliated entity, have "gotten nailed

with 3 lawsuits about accessibility (Ex. "C."). In other words, the Defendant is a

recividist.

## III. ARGUMENT

### A. Deborah Laufer Has Standing

The Eleventh Circuit held that: "a plaintiff seeking an injunction under Title III either must have 'attempted to return' to the [site of discrimination] or at least 'intend to do so in the future'." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335, 1336 (11th Cir. 2013) citing *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) and *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237 (11th Cir. 2000). In other words, a plaintiff satisfies the imminent danger requirement if she alleges that she intends to return in the near future. In the alternative, the requirement is also satisfied because the plaintiff had "attempted to return." In the instant case, Plaintiff satisfied the *Marod* requirement because she visited and revisited the discriminatory websites multiple times before this lawsuit was filed: specifically, on September 13, 2019, September 14, 2019 and September 15, 2019, (Laufer, ¶ 7). She revisited the same websites on or about February 19, 2020 (Laufer, ¶ 11). Under *Marod*, Plaintiff has established standing. Further, the Plaintiff both intends to return to the websites in the future and has implemented and adheres to a system of returning to all websites of all hotels she sued, as explained in greater detail in her Affidavit (Laufer, ¶ 11). Thus, Plaintiff satisfies the *Marod* standard because she both (1) revisited the sites prior to the suit; and (2) intends to revisit the sites in the near future and has a reliable system to assist in

assuring follow-up. In addition, and even assuming that the Defendant did anything to eliminate the deficiencies in its web presence, there is a "presumption" of future injury when, as would have had to be the case here, cessation occured in response to suit, *see*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

### B. The Defendant Violates the Law.

In order to state a claim under the Americans With Disabilities Act, a plaintiff need only establish that (1) she is disabled, (2) that the property she visited is a place of public accommodation, and (3) that she was denied full and equal treatment because of her disability. *E.g., Access Now, Inc., v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla 2001).  Because of her physical impairments, Deborah Laufer qualifies as a disabled person within the meaning of Title III of the Americans With Disabilities Act ("ADA"). When looking for hotels, it is important to her to be able to determine whether or not a particular establishment is ADA compliant and what accommodations are available that pertain to her particular disabilities.

The Defendant owns and operates the Quality Inn motel. That motel is a place of public accommodation within the meaning of the law. Thus, the Defendant is  responsible for complying with the obligations of the ADA including

those established by 28 C.F.R. Section 36.302(e)(1). Rooms at the Defendant's motel can be booked online through the Defendant's own website, and through the third party booking sites identified in the complaint.

As of the date on which this lawsuit was filed, the Defendant's website and the third party booking sites it utilized failed to comply with the requirements of 28 C.F.R. Section 36.302(e)(1). When prior to the filing of this lawsuit, Ms. Laufer visited the Defendant's website and third party booking sites, she was unable to determine whether or not the hotel met her accessibility needs because of the non-compliance with the requirements set forth in 28 C.F.R. 36.302(e). A violation of the A.D.A. occurs when the disability person encounters the violation, *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1332 (11th Cir. 2013)[4]. Where a website is involved, as the Court in *Kennedy v. Gold Sun Hospitality, LLC*, case no: 8:18-cv-842-VMC (M.D. Fla) concluded, the "failure of [the hotel's] on line reservation system to comply with the regulation is by itself discrimination...."(hearing transcript, p. 34).[5]  See *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897-WPD, DE 34 (S.D. Fla. 6/6/19); also,  *Kennedy v. Sai Ram Hotels, LLC*,2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing

---

[4]"When he encounters those barriers, Plaintiff Houston 'has suffered injury in precisely the form the statute was intended to guard against.'" (citation omitted).

[5]Hearing transcript attached as Exhibit "B."

*Honeywell v. Harihar Inc*., 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018), *Parks v. Richard*, case no: 2:20-cv-227-SPC-NPM (M.D.Fla.)[D.E.11]. Thus, upon encountering the non-complaint websites Ms. Laufer was both deprived of the opportunities offered to the non-disabled public of enjoying equal access to the full advantages, benefits, goods and services available at the property, segregated her from the able bodied, and treated differently than members of the non-disabled public on the basis of her disability and that violates the law.

As of February 20, 2020, the Defendant had done nothing to bring the websites into compliance with the requirements of 28 C.F.R. Section 36.302(e)(1). Because 28 C.F.R. 36.302(e)(1), explicitly imposes liability on owners of places of public accommodation where reservations are made "through third parties," whether or not the Defendant owns or operates and of the websites is irrelevant to its liability. As noted above (Ex. 'C"), the Defendant has been "nailed" three times for accessibility violations yet persists in violating the law.

**C. Website Cases Cannot Be Mooted**.

Finally, website claims cannot be mooted particularly where, as here, the Plaintiff asks that the Defendant be ordered not only to bring the websites into compliance but to "monitor and maintain" [D.E. 3, p. 12,¶ (b). In *Haynes v. Hooters Am., LLC.,* 893 F.3d 781 (11th Cir. 2018), the Eleventh Circuit addressed

14

the issue of asserting a mootness claim in a case involving website discrimination:

> Relatedly, Haynes requested in his complaint that the district court direct Hooters to <u>continually update and maintain</u> its website to ensure that it remains fully accessible. Accordingly, even if Hooters' website becomes ADA compliant, Haynes seeks injunctive relief requiring Hooters to maintain the website in compliant condition. Thus, ... , there is still a live controversy about whether Haynes can receive an injunction to force Hooters to make its website ADA compliant or to maintain it as such. Therefore, this case is not moot.

Id., 784 (underlining in original).

At least two others courts have held that a defendant cannot moot an ADA case simply by making its website compliant. *See Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. Sept. 28, 2007) (cannot moot because of the "potential for new pages"). *Brooke v. A-Ventures, LLC,* 2017 U.S. Dist. LEXIS 193259 * 9(D. Ariz. Nov. 22, 2017), involved a mootness defense whereby the defendant hotel had claimed that it had fixed its online reservations system. In rejecting this defense, the court stated that:

> all defendant has done is change its website and adopt a new internal policy, both of which could easily be changed in the future. Defendant has not met its heavy burden of showing that it is absolutely clear that its wrongful behavior could not reasonably be expected to recur. This case is not moot."

*Id*.

> In website cases and issues of proof aside, on which subject, *see*,

15

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007), there is simply no set of facts that are sufficient to moot a case.

## IV. CONCLUSION

In conclusion, Deborah Laufer is an individual with disabilities. She visited the Defendant's website and the third party booking sites the Defendant utilizes both before and after suit was filed. On all occasions, she encountered the violations of 28 C.F.R. Section 36.302(e)(1). She intends revisiting the websites. She has thus established her standing and has suffered from the Defendant's violations of the law. The regulation at issue here became effective March 15, 2012. Despite eight years' notice, the Defendant's web presence does not comply with the law. That, coupled with fluid nature of websites, requires injunctive relief to insure that the Defendant does not persist in its bad old ways.

**WHEREFORE**, Plaintiff requests that Summary Judgment be entered in Plaintiff's favor as there exists no genuine issue of material fact, and that the Court Order that the Defendant to bring the websites into immediate compliance with the ADA, and award Plaintiff her attorney's fees, and litigation expenses, including expert fees and costs.

*/s/ Philip Michael Cullen, III.*
Fla. Bar No: 167853
**PHILIP MICHAEL CULLEN, III**
Attorney-at-Law – Chartered.
621 South Federal Highway, Suite Four
Fort Lauderdale, Florida 33301
Telephone; (954) 462-0600
Facsimile: (954) 462-1717
CULLENIII@aol.com

## LOCAL RULE 7.1(F) CERTIFICATE

**I HEREBY CERTIFY** that this motion and memorandum contains 3,797 words.

*/s/Philip Michael Cullen, III, Esq*.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on May 22, 2020, I electronically filed the foregoing  with the Clerk of the Court using the CM/ECF system which will automatically send  e-mail notification of such filing to the attorneys of record.

*/s/ Philip Michael Cullen, III, Esq.*

17